IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

*Alexandria Division*

YONATHAN MELAKU,                          )
                                          )
         Petitioner,                      )
                                          )         CRIMINAL NO. 1:12-cr-27
         v.                               )
                                          )         CIVIL NO. 1:16-cv-698
UNITED STATES OF AMERICA,                 )
                                          )
         Respondent.                      )

**Government's Supplemental Memorandum in Opposition to
Defendant's Motion Seeking Habeas Relief Under *United States v. Davis***

The Court has ordered the United States to file a memorandum expressing its views on

the merits of the defendant's collateral attack on one of his convictions in light of *United States*

*v. Davis*, 139 S. Ct. 2319 (2019).  (ECF No. 98.)  The Court should deny the habeas petition.

The defendant "self-radicalized" in opposition to American military action in Iraq and

Afghanistan.  In late 2010, he repeatedly used a semi-automatic pistol to shoot at military

installations and federal buildings, including the Pentagon, a Marine Corps recruiting station, the

National Museum of the Marine Corps, and a Coast Guard recruiting office.  He also developed

an elaborate plot to desecrate the graves of American service members using spray paint and

ammonium nitrate, an ingredient commonly used in explosives.  After being arrested, he told law

enforcement that he had additional plans to commit three more shootings of military buildings in

Virginia and to hijack a military fuel tanker truck and set it on fire in Maryland.

The defendant pleaded guilty to a three-count criminal information, and the Court

sentenced him to 300 months' imprisonment.  He later filed a habeas petition under 28 U.S.C.

§ 2255, where he argued that one of his convictions, for discharging a firearm in relation to a

crime of violence in violation of 18 U.S.C. § 924(c), was invalid in light of *Samuel Johnson v. United States*, 135 S. Ct. 2551 (2015). The predicate offense underlying the challenged § 924(c) conviction was willfully causing injury to government property in excess of $1,000, in violation of 18 U.S.C. § 1361. The Court dismissed the petition on timeliness grounds, and litigation at the Fourth Circuit ensued. The case is now on remand.

While the government no longer raises a timeliness defense to the petition, the defendant is not entitled to relief on the merits. In *United States v. Davis*, 139 S. Ct. 2319 (2019), the Supreme Court held only that 18 U.S.C. § 924(c)(3)(B) is void for vagueness. *Davis* has no effect with respect to offenses that qualify as crimes of violence under § 924(c)'s still-valid force clause, 18 U.S.C. § 924(c)(3)(A), and a violation of 18 U.S.C. § 1361 is such a crime.

Section 1361 criminalizes both "willfully injuring" federal property and "committing any depredation against" such property, and it contains an enhanced penalty provision for offenses causing more than $1,000 in damage. The defendant pleaded guilty to willfully injuring property. It is not possible to commit such an offense, especially in a way that causes more than $1,000 in damage, without purposefully using violent force. Committing a depredation against government property—§ 1361's second prong—is also a force-clause crime. Depredation in this context means "robbing," "plundering," or "pillaging"—all actions that require the use of force.

Because a violation of § 1361 remains a valid force-clause crime, the defendant's collateral attack fails and this Court should deny his habeas petition.

### Procedural Background

**A.      The Defendant's Prosecution and Sentencing**

This case began in June 2011 with the filing of a criminal complaint. In January 2012, the defendant waived indictment and pleaded guilty to a criminal information alleging three offenses: willfully causing injury to government property in excess of $1,000, in violation of

18 U.S.C. § 1361 (Count 1); using, carrying, and discharging a firearm in relation to a crime of violence, in violation of 18 U.S.C. § 924(c) (Count 2); and attempted injury to veterans' memorials on property of the United States, in violation of 18 U.S.C. § 1369 (Count 3).  (ECF Nos. 16–20.)  Count 2 specified that the predicate crime of violence supporting the § 924(c) charge was the injury-to-property offense appearing in Count 1.  (ECF No. 17 at 2.)

In the Statement of Facts accompanying his guilty plea (ECF No. 20), the defendant admitted that on five occasions between October and November 2010, he had, "during the nighttime, fired multiple rounds from a 9mm semi-automatic pistol at various military-related sites in the Northern Virginia suburbs of Washington, D.C."  (*Id.* ¶ 1.)  More specifically:

- On October 17, the defendant fired ten rounds at the National Museum of the Marine Corps in Triangle, Virginia.

- On October 19, the defendant fired multiple shots at the Pentagon, "striking the south side exterior of the Pentagon between the first and fourth floors as well as individual windows on the third and fourth floors."  This conduct was the basis for the charge in Count 1.  The total cost of repairs was $15,144.

- On the night of October 25–26, the defendant fired shots at a Marine Corps recruiting station in Chantilly, Virginia.

- On October 29, the defendant again fired shots at the National Museum of the Marine Corps, this time recording a video of his actions.

- On the night of November 1–2, the defendant fired at least one shot at the U.S. Coast Guard recruiting office in Woodbridge, Virginia.

(*Id.*)  In the video recording from the shooting on October 29, the defendant narrated his actions as follows:

> That's a military building and that's the building I'm going to be targeting…. Last time I hit them, they turned off the lights for like ... four or five days....  Punks! Now, here we go again.  This time, I'm gonna turn it off permanently.  Alright. Alright, next time I turn on this video, I'm gonna be shooting them.  That's what they get....  That's the target.  That's the military building that's going to, gonna get attacked.

(*Id.* ¶ 1(b).)

In addition to these five shootings, the defendant also admitted to a plot to desecrate the graves of American service members.  More specifically, on June 17, 2011, he was present on the grounds of Ft. Meyer in Arlington, Virginia, when officers approached him and he fled, dropping a backpack.  The backpack contained "numerous spent 9mm shell casings; four clear Ziplock bags, each containing five pounds of ammonium nitrate (one of the most common components of homemade explosives); one can of black spray paint; two cans of Rust-Oleum; work gloves; a headlamp; and a spiral notebook with numerous Arabic statements referencing the Taliban, al Qaeda, Osama bin Laden, 'The Path to Jihad' including 'defeat coalition and allies and America,' as well as a list of several other individuals associated with foreign terrorist organizations."  (*Id.* ¶ 3.)  According to the Statement of Facts:

> At the time [the defendant] was apprehended, he was attempting to make his way to an area of the Arlington National Cemetery containing graves of deceased veterans of the U.S. military engagements in Afghanistan and Iraq…. Once at this location, [he] intended to desecrate and injure grave markers by spray-painting the markers with Arabic statements and by leaving the ammonium nitrate he was carrying at the sites of these grave markers.

(*Id.*)  The Statement of Facts also revealed that, on June 17, 2011, the defendant was storing in his bedroom closet "a typed list bearing the heading 'Timer,'" which contained items "consistent with what would be required to construct an electronic firing mechanism for an explosive device."  (*Id.* ¶ 4.)  Several items on the list had already been crossed off.  (*Id.*)

In its sentencing memorandum, the government described the defendant's motivations this way:

> In a February 15, 2012 interview, [the defendant] explained that he had self-radicalized beginning in 2003 following the Iraq war.  He stated that he planned the Northern Virginia shootings in order to send a message to U.S. authorities and to the public that "you can't be fighting over there" (meaning in Iraq and Afghanistan).  He stated that he wanted people "to be afraid for supporting the war." [He] further stated that he decided to stop shooting at government buildings because his message was not being heard.

> He decided to escalate his activities and planned his trip to the Arlington National Cemetery in June 2011.  He stated that he planned to desecrate the grave markers of U.S. veterans of the Iraq and Afghanistan conflicts because he disapproved of the United States waging war, as he perceived it, against Muslims.  [He] explained that he had budgeted five to six hours to spray paint messages in Arabic on the grave markers.  (In a notebook in the backpack found at the time of his arrest, the defendant had mapped out these messages on approximately 2,379 grave markers.)  [He] further stated that he planned to leave the shell casings from the Fall 2010 shootings at the cemetery to demonstrate that it was the same person who committed the shootings and the desecration and to instill fear.  The defendant stated that he decided to leave the ammonium nitrate at the cemetery, also to instill fear, but that if he had not left it, he might have decided subsequently to make a bomb with it.  He specifically purchased a certain grade of ammonium nitrate because it was "already ready to go."
>
> Finally, on this same date, [the defendant] stated that if he felt his message had not been received following the desecration at the Arlington National Cemetery, he planned to commit three more shootings of military buildings in Virginia and a fourth incident in which he would hijack a military fuel tanker truck and set it on fire in Maryland.

(ECF No. 58 at 7–8 (paragraph break added).)  The defendant's plea agreement stated that, under Federal Rule of Criminal Procedure 11(c)(1)(C), both he and the government "agree[d]that the appropriate sentence in this case is a total term of imprisonment of twenty-five … years on all three counts."  (ECF No. 19 ¶ 5.)

The Court imposed the recommended 25-year sentence, which included consecutive terms of 120 months' imprisonment on Count 1, 120 months on Count 2, and 60 months on Count 3.  (ECF No. 68.)

According to the Bureau of Prisons Inmate Locator, the defendant's anticipated release date is April 16, 2033.

### B.    Post-Conviction Proceedings

The defendant filed his habeas petition under 28 U.S.C. § 2255 in June 2016, arguing that his conviction under § 924(c) was not predicated on a valid "crime of violence" in light of *Samuel Johnson v. United States*, 135 S. Ct. 2551 (2015).  (ECF No. 75.)  After full briefing

(ECF Nos. 79, 83, 84–85), the Court dismissed the petition as untimely under 28 U.S.C. § 2255(f)(3) in September 2017.  (ECF No. 86.)  In doing so, it relied on *United States v. Brown*, 868 F.3d 297 (4th Cir. 2017), to conclude that the defendant's motion was time-barred because *Johnson* addressed only the residual clause in the Armed Career Criminal Act and did not announce any right retroactively applicable to § 924(c).  (*See id.* at 5–6.)

An appeal to the Fourth Circuit followed.  The defendant filed an informal brief in November 2017.  (No. 17-7397, ECF No. 7.)  After placing the case in abeyance, the Fourth Circuit lifted the stay on consent of the parties and directed the government to submit an informal response brief.  (No. 17-7397, ECF No. 15.)  In its brief, the government withdrew any timeliness defense to the petition in light of *Davis*.  (No. 17-7397, ECF No. 16 at 8–9.)  The Fourth Circuit then "grant[d] a certificate of appealability on the issue of whether an 18 U.S.C. § 1361 offense categorically qualifies as a crime of violence for purposes of 18 U.S.C. § 924(c)" and "remand[ed] so that the [district] court can address this issue in the first instance."  *United States v. Melaku*, 799 F. App'x 203, 204 (4th Cir. 2020).

This Court then ordered supplemental briefing.  (ECF No. 97.)  The defendant has filed his supplemental pleading in support of habeas relief.  (ECF No. 99.)  The government hereby files its response.

## Argument

The defendant's habeas petition is unavailing.  Violating 18 U.S.C. § 1361, whether by "willfully injuring" federal property or "committing any depredation against" such property, is a crime of violence under the force clause appearing in 18 U.S.C. § 924(c)(3)(A).  Because *Davis* did not affect that provision, the defendant's conviction remains valid.

**I.      The defendant's § 924(c) conviction remains valid.**

Under 18 U.S.C. § 924(c)(1)(A), it is a federal crime to use or carry a firearm during and

in relation to a crime of violence, or to possess a firearm in furtherance of a crime of violence.

The statute defines "crime of violence" as a federal offense that is a felony and—

> (A)      has as an element the use, attempted use, or threatened use of physical force
> against the person or property of another, or

> (B)      that by its nature, involves a substantial risk that physical force against the
> person or property of another may be used in the course of committing the
> offense.

18 U.S.C. § 924(c)(3).  Subsection (A) is commonly referred to as the "force clause," whereas

subsection (B) is commonly referred to as the "residual clause."  *Davis* struck down the residual

clause as unconstitutional, meaning that the defendant's conviction on Count 2 remains valid

only if it rests on a valid force-clause predicate.

The statute defining the defendant's predicate offense, 18 U.S.C. § 1361, states:

> Whoever willfully injures or commits any depredation against any property of the
> United States, or of any department or agency thereof, or any property which has
> been or is being manufactured or constructed for the United States, or any
> department or agency thereof, or attempts to commit any of the foregoing offenses,
> shall be punished as follows:

> If the damage or attempted damage to such property exceeds the sum of $1,000, by
> a fine under this title or imprisonment for not more than ten years, or both; if the
> damage or attempted damage to such property does not exceed the sum of $1,000,
> by a fine under this title or by imprisonment for not more than one year, or both.

As an initial matter, § 1361 is divisible into two sub-offenses:  willfully injuring

government property and committing a depredation against government property.[1]  While the

---

[1] To be precise, the statute's enhanced penalty provision results in there being four species
of a § 1361 violation:  (i) willfully injuring government property, causing damage more than
$1,000; (ii) willfully injuring government property, causing damage of $1,000 or less; (iii)
committing a depredation against government property, causing damage more than $1,000; and
(iv) committing a depredation against government property, causing damage of $1,000 or less.

issue appears to be one of first impression, § 1361's two offense prongs have different definitions and are not easily conceptualized as different means of committing the same overarching crime.  Likewise, the criminal information in this case, which charges the defendant only with "willfully injur[ing] property of the United States by shooting at the Pentagon, causing damage in excess of $1,000" (ECF No. 17 at 1), is itself compelling evidence of divisibility.  *See Mathis v. United States*, 136 S. Ct. 2243, 2257 (2016) (stating that an indictment may be helpful proof of divisibility insofar as it "could indicate, by referencing one alternative term to the exclusion of all others, that the statute contains a list of elements, each one of which goes toward a separate crime"); *United States v. Allred*, 942 F.3d 641, 651 (4th Cir. 2019) (stating that divisibility analysis should take account of "how the offense has historically been charged"), *cert. denied*, 140 S. Ct. 1235 (2020).

The divisibility issue is not, however, dispositive, and the Court does not need to resolve the question to decide this case.  Because "willfully injuring property" and "committing a depredation" against property both require the use of violent force, a violation of § 1361 categorically qualifies as a crime of violence even if its two prongs define separate means of committing the same offense.

### A.    "Willfully injuring" federal property is a force-clause crime.

To begin, willfully injuring property is a force-clause crime.  This is so for at least three reasons.

*First*, the plain meaning of both "injure" and "damage" connotes a use of force.  In interpreting a statute, the Court "will apply [its] plain meaning" as "determined by reference to its words' ordinary meaning at the time of the statute's enactment." *United States v. Abdelshafi*, 592 F.3d 602, 607 (4th Cir. 2010) (internal quotation marks omitted).  It is clear as a matter of

both plain meaning and common sense that one cannot "injure" property without application of physical force.

That conclusion is consistent with Supreme Court guidance. In *Curtis Johnson v. United States*, 559 U.S. 133 (2010), the Supreme Court held that "in the context of a statutory definition of 'violent felony,' the phrase 'physical force' means violent force—that is, force capable of causing physical pain or injury to another person." *Id.* at 140. For that reason, the force inherent in common-law battery, which could include "the merest touch," was not sufficient. *Id.* at 143. In *Stokeling v. United States*, 139 S. Ct. 544 (2019), the Supreme Court returned to the meaning of "violence force" and held that the force required to commit common-law robbery satisfies *Curtis Johnson*'s definition. That is because the force necessary to effectuate a robbery "must overpower a victim's will" and is therefore "capable of causing physical pain or injury." *Id.* at 553 (quoting *Curtis Johnson*, 559 U.S. at 140). *Stokeling* expressly rejected the argument that "physical force" means "force that is 'reasonably expected to cause pain or injury.'" *Id.* at 554. Instead, it concluded that "[*Curtis*] Johnson … does not require any particular degree of likelihood or probability that the force used will cause physical pain or injury; only potentiality." *Id.* Consistent with *Curtis Johnson* and *Stokeling*, one cannot injure property without applying physical force capable of causing pain or injury.

*Second*, the Fourth Circuit has previously concluded that injury-to-property crimes are crimes of violence. In *United States v. Mathis*, 932 F.3d 242 (4th Cir. 2019), it held that substantive Hobbs Act robbery qualifies as a force-clause crime. *Mathis* reasoned that the Hobbs Act's definition of robbery (the taking of personal property "by means of actual or threatened force, or violence, or fear of injury, immediate or future, to [the victim's] person or property," 18 U.S.C. § 1951(b)(1)) is not meaningfully different from the definition of bank robbery

appearing in 18 U.S.C. § 2113(a), which the Fourth Circuit held was a crime of violence in *United States v. McNeal*, 818 F.3d 141, 152–53 (4th Cir. 2016). *See Mathis*, 932 F.3d at 266. In doing so, *Mathis* expressly stated that "threats of injury to tangible and intangible property" are sufficient to violate § 924(c)'s force clause. *Id.* at 266. If threats to property are sufficient to qualify as force-clause crimes, it follows *a fortiori* that actual damage to property qualifies as well.

*Third*, a violation of § 1361 is not the kind of offense that can be committed recklessly.[2] Instead, injury to property under § 1361 must be committed "willfully." The Fourth Circuit has previously held that willfulness in the context of § 1361 means that "the accused acted intentionally, with knowledge that he was breaching the statute." *United States v. Moylan*, 417 F.2d 1002, 1004 (4th Cir. 1969); *see also United States v. Derington*, 229 F.3d 1243, 1248 (9th Cir. 2000) (holding "that an instruction requiring knowledge of the unlawfulness of the act is necessary"). Notably, there is a circuit split on this question, with at least two other circuits holding that willfulness under § 1361 requires "only that the defendant knows that he's destroying another person's property without the person's authorization." *United States v. Urfer*, 287 F.3d 663, 666 (7th Cir. 2002); *accord United States v. Krause*, 914 F.3d 1122, 1127 (8th Cir. 2019).

For present purposes, the circuit split on § 1361's willfulness requirement is of no moment. Under either definition, a violation of § 1361 requires a showing "of specific intent." *United States v. Jones*, 607 F.2d 269, 273–74 (9th Cir. 1979). Thus, a defendant cannot violate

---

[2] *Cf. United States v. Battle*, 927 F.3d 160, 166 (4th Cir.) (stating that, if committed recklessly, "a crime 'may result in' bodily injury without involving the use of force"), *cert. denied*, 140 S. Ct. 671 (2019). The Supreme Court will decide whether offenses that can be committed recklessly categorically qualify as crimes of violence or violent felonies in *United States v. Borden*, No. 19-5410. That case will be argued November 3, 2020.

10

§ 1361 accidentally; any application of force under the statute must be purposeful.  A violation of the statute will therefore necessarily involve the intentional use of force.  *Cf. United States v. Jenkins*, 719 F. App'x 241, 245 (4th Cir.) (holding that when a statute requires that a defendant "specifically intends to 'maim, disfigure, disable or kill,' then as a practical matter, the means employed toward that end will involve violent force"), *cert. denied*, 139 S. Ct. 157 (2018).

Accordingly, a violation of § 1361 committed by willfully injuring government property in a manner causing over $1000 in damage is a crime of violence under § 924(c)'s still-valid force clause.

### B.      Committing a depredation against property of the United States also requires the use of physical force.

Section 1361's second prong—committing a depredation against property of the United States—also requires the use of force.  As the Sixth Circuit has explained, a "depredation" under § 1361 is "the act or an instance of robbing, plundering, or laying waste." *United States v. Jenkins*, 554 F.2d 783, 786 (6th Cir. 1977).  The Sixth Circuit adapted this definition from *Deal v. United States*, 274 U.S. 277 (1927), which interpreted the meaning of "depredation" in a post-office regulation.[3]  In doing so, the Supreme Court defined "depredation" to mean "the act of plundering; a robbing; a pillaging." *Id.* at 283 (quoting Century Dictionary).

Insofar as criminal statutes are interpreted in light of "the ordinary meaning of [a] term … at the time Congress enacted the statute," *Perrin v. United States*, 444 U.S. 37, 42 (1979), it is significant that Congress added the "willfully injure" and "commit any depredation" language to § 1361's predecessor statute in 1934.  *See* Act of June 18, 1934, Pub. L. No. 73-394,

---

[3] The regulation at issue in *Deal* stated that "[p]ostmasters and other postal employees will be held personally responsible by the Post Office Department for the wrong delivery, depredation upon, or loss of any registered letter or parcel if such wrong delivery, depredation, or loss be due to negligence or disregard of the regulations."  274 U.S. at 280.

48 Stat. 996. At the time, "depredation" was understood to have the same meaning adopted by the Supreme Court in *Deal*. *See* Black's Law Dictionary (3d ed. 1933) (defining "depredation" as "[t]he act of plundering, robbing, or pillaging" (citing *Deal*)).

The three means of committing a depredation—robbing, plundering, and pillaging—all require the use of force. Consistent with *Stokeling* and the Fourth Circuit's decision in *Mathis*, depredation-as-robbery clearly involves the use or threatened use of physical force. With respect to pillaging and plundering, the 1933 edition of Black's Law Dictionary, which was in circulation when Congress first criminalized depredation against government property, defines the terms this way:

- **Pillage:** Plunder; the forcible taking of private property by an invading or conquering army from the enemy's subjects.

- **Plunder:** The most common meaning of the term "to plunder" is to take property from persons or places by open force, and this may be in course of a lawful war, or by unlawful hostility, as in the case of pirates or banditti. But in another and very common meaning, though in some degree figurative, it is used to express the idea of taking property from a person or place, without just right, but not expressing the nature or quality of the wrong done.

(*See* **Attachment 1**.) Pillaging therefore qualifies as a force-clause crime because it involves "the forcible taking of property." The first definition of plundering, taking property "by open force," qualifies as well.

That leaves the second definition of plundering—"taking property from a person or place, without just right." One might be tempted to conclude that, under this definition, plundering is more akin to a larceny or theft offense that does not require the use of force. But this definition of plundering should not control the analysis in light of § 1361's legislative history.

Section 1361's first predecessor statute did not contain any language regarding destruction or theft of government property. *See* Act of March 4, 1909, Pub. L. No. 60-350, § 35, 35 Stat. 1088, 1095. Then, in 1918, Congress added language making it a crime "to take

12

and carry away or take for [one's] own use, or for the use of another, with intent to steal or purloin, any personal property of the United States." Act of October 23, 1918, Pub. L. No. 65-228, 40 Stat. 1015. With the additional amendments in 1934, the statute stated that "whoever shall take and carry away or take for [one's] own use, or for the use of another, with intent to steal or purloin, or shall willfully injure or commit any depredation against any property of the United States," shall be guilty of a crime. *See* 48 Stat. at 996.

Accordingly, "depredation" in § 1361 cannot mean plunder-by-theft, as opposed to plunder-by-force, because § 1361's predecessor statute already criminalized theft. (And indeed, theft of government property continues to be criminalized under a separate statutory provision, 18 U.S.C. § 641.) Interpreting "depredation" to encompass "theft" would therefore impermissibly turn the word "depredation" into surplusage and would fail "to give effect to Congress' clearly expressed intent." *United States v. Talebnejad*, 460 F.3d 563, 568 (4th Cir. 2006). Contrary to such a reading, courts should interpret statutes such "that all language in the statute should be given full effect." *Healthkeepers, Inc. v. Richmond Ambulance Auth.*, 642 F.3d 466, 471–72 (4th Cir. 2011) (quoting *Clinchfield Coal Co. v. Harris*, 149 F.3d 307, 313 (4th Cir. 1998)). Courts also have "deep reluctance to interpret a statutory provision so as to render superfluous other provisions in the same enactment." *Id.* (quoting *Pa. Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 562 (1990)). And indeed, the modern edition of Black's Law Dictionary abandons the concept of plunder-by-theft altogether. Instead, it defines "plunder" by cross-reference to "pillage," which it, in turn, defines as "[t]he forcible seizure of another's property, esp. in war; esp., the wartime plundering of a city or territory." Black's Law Dictionary (11th ed. 2019).

13

To commit a depredation against government property by plundering it, robbing it, or pillaging it, a defendant's conduct will necessarily involve the use of force. And indeed, the Ninth Circuit has expressly held, in the context of piracy offenses, that all three species of depredation—plundering, robbing, and pillaging—"require the use of force." *United States v. Shi*, 525 F.3d 709, 721 (9th Cir. 2008) (discussing piracy under 18 U.S.C. § 2280 by reference to *United States v. Smith*, 18 U.S. (5 Wheat.) 153, 161 (1820), which defined piracy as "robbery, or forcible depredations upon the sea"); *see also United States v. Dire*, 680 F.3d 446, 452–59 (4th Cir. 2012) (discussing the history of piracy-as-depredation).

To give one especially colorful example, the Ninth Circuit once held that a defendant committed a depredation against federal property both when he shot a deer on the National Bison Range and when he "returned under cover of darkness, climbed the Range's eight-foot-high boundary fence, severed the deer's head, dragged it over the fence and to the road, loaded it in his truck, and drove home." *United States v. Rebich*, No. 95-30177, 1996 WL 252679, at *1 (9th Cir. May 8, 1996) ("These acts, no less than the actual shooting itself, constitute a depredation of property."). Given the Supreme Court's definition of depredation in *Deal*, any conduct which qualifies as a depredation under § 1361 will, like the head-severing in *Rebich*, necessarily involve a use of physical force sufficient to satisfy § 924(c)(3)(A).

Accordingly, even if the Court were to treat the injury and depredation prongs of § 1361 as means rather than elements, a violation of the statute still categorically qualifies as a crime of violence. For that reason, the defendant's habeas petition fails.

**C.     It is impossible to violate § 1361 while causing more than $1,000 in damage by using only *de minimis* force.**

One objection that might arise to the foregoing arguments is that a defendant could injure property, or commit a depredation against property, by using only *de minimis* force. Such

14

minimal harm, the argument would go, cannot qualify as "force capable of causing physical pain or injury to another person" within the meaning of *Curtis Johnson*.  559 U.S. at 140.

Even setting aside *Stokeling* and its gloss on *Curtis Johnson*, however, that argument fails.  Here, the defendant pleaded guilty to the enhanced version of violating § 1361 that results when "the damage or attempted damage to [government] property exceeds the sum of $1,000." 18 U.S.C. § 1361.  Because the damage requirement increases the statutory penalty range, it is an element of the crime.  *See Burrage v. United States*, 571 U.S. 204, 210 (2014) (stating that an "enhancement [which] increase[s] the minimum and maximum sentences to which [a defendant] was exposed … is an element that must be submitted to the jury and found beyond a reasonable doubt" (citing *Alleyne v. United States*, 570 U.S. 99, 114–16 (2013); *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000))).

As such, the question is whether a defendant can intentionally cause more than $1,000 in damage to property without using violent force.  Purely as a matter of common sense, the answer is clearly "no."

### D.        The defendant's counterarguments are without merit.

The defendant effectively raises one argument in opposition to the view that § 1361 constitutes a crime of violence, which is that the statute outlaws certain forms of vandalism that do not categorically involve "force capable of causing physical pain or injury to another person." *Curtis Johnson*, 559 U.S. at 140.

There are two problems with this argument.  First, the defendant was not charged with injury to proper *simpliciter*.  Rather, he was charged with "willfully injur[ing] property of the United States by shooting at the Pentagon, causing damage in excess of $1,000."  (ECF No. 17 at 1.)  As explained above, *see supra* Part I.C., the heightened damage threshold is an element of

15

the offense.  Accordingly, whatever the strength of the defendant's vandalism argument for *other* violations of § 1361, the crime here categorically did not involve *de minimis* force.

Second, and more fundamentally, the defendant conflates the *quantum* of force used to commit a crime with the *object* of the force itself.  It may be true that, in a colloquial sense, a defendant who vandalizes government property with spray paint has not done something "violent."  But if an offender were to empty a can of spray paint into another person's face, there would be no doubt that the offender had committed a violent assault.  In both cases, however, the quantum of force—*i.e.*, the force deployed by the purposeful release of pressurized chemicals— is the same, and in both cases the force is violent because it is "capable of causing physical pain or injury to another person." *Curtis Johnson*, 559 U.S. at 140.  Nothing further is required.

To be sure, there is some doctrinal oddness that results from applying the definition of violent force that appears in *Curtis Johnson* to injury-to-property crimes.  That is because *Curtis Johnson* and its progeny almost exclusively involve crimes against the person, not crimes against property.  But it cannot be the case that there is no such thing as violent force deployed against property, since 18 U.S.C. § 924(c)(3)(A) expressly contemplates it.  Accordingly, and consistent with current doctrine, it appears that the appropriate response to the defendant's counter-examples is to recapitulate them with a *person* as the object of the force used instead of *property*. And indeed, in every instance, it then becomes clear that the force used was violent.[4]

First, the defendant cites *United States v. Komisaruk*, 885 F.2d 490 (9th Cir. 1972), which involved the destruction of sophisticated government computing equipment:

---

[4] Alternatively, it may be that, if squarely presented with the question, the Supreme Court would simply hold that *Curtis Johnson* does not apply to property crimes.  The government will nevertheless brief this case under the assumption that it must clear *Curtis Johnson*'s hurdle.

16

> Komisaruk destroyed the ground control center for the Navstar military navigation system at Vandenberg Air Force Base early Tuesday morning.
>
> Komisaruk spent two hours in the control center, using a crowbar, boltcutters, hammer and cordless drill to wreck the equipment she found there. She spray painted the outside of the installation. The building was unattended at the time, and at no time did anyone interrupt her work. She then walked to the main gate of the base and hitchhiked to San Francisco.

*Id.* at 495–96. If a defendant were to use a crowbar, boltcutters, a hammer, and a cordless drill to attack another person, there would be no doubt that the force used was "violent." That conclusion does not change because a "Navstar military navigation system" was the object of the defendant's force rather than a person.

That leaves the question of whether using spray paint qualifies as violent force. The First Circuit has helpfully considered this question in the context of a crime-of-violence analysis. In *United States v. Edwards*, 857 F.3d 420 (1st Cir. 2017), the defendant argued that the Massachusetts offense of armed assault with intent to commit murder, in violation of Mass. Gen. Laws ch. 265, § 18(b), was not a violent felony under the Armed Career Criminal Act. In doing so, he pointed to three state cases in which defendants had used chemicals to attack others in support of an argument that one could violate the Massachusetts statute without directly using violent force. *See Edwards*, 857 F.3d at 426 (citing *Commonwealth v. Barrett*, 436 N.E.2d 1219, 1221 (Mass. 1982) (the defendant sprayed his victim "in the face with a liquid from an aerosol can"); *Commonwealth v. Vonberg*, No. 06-P-1627, 2007 WL 4097332, at *1 (Mass. App. Ct. Nov. 16, 2007) (unpublished table disposition) (defendant sprayed his victim "in the face with WD-40"); *Commonwealth v. Lord*, 770 N.E.2d 520, 522 (Mass App. Ct. 2002) (defendant sprayed his victim "in the face with mace")).

Reviewing these three cases, the First Circuit concluded that, in fact, all of them involved violent force. First, it noted that in *United States v. Castleman*, 572 U.S. 157 (2014), the

17

Supreme Court held that indirect applications of force—such as poisoning—nonetheless qualify as violent. *Edwards*, 857 F.3d at 426 (citing *Castleman*, 572 U.S. at 171); *accord United States v. Battle*, 927 F.3d 160, 166 (4th Cir.) (applying *Castleman* to the definition of violent felonies under the Armed Career Criminal Act), *cert. denied*, 140 S. Ct. 671 (2019). The First Circuit then rejected the defendant's reliance on the aerosol cases:

> For one thing, Edwards is dead wrong in characterizing the poisoning as an application of indirect force. The *Barrett*, *Vonberg*, and *Lord* defendants directly administered the noxious substance to the victim by spraying it in the victim's face. And the application of poison in this way is a direct application of force.

*Edwards*, 857 F.3d at 427.

This logic of *Edwards* extends seamlessly to § 1361. A defendant who uses spray paint to vandalize government property, and who causes more than $1,000 in damage in doing so, uses violent force to the exact same extent as a defendant who unloads the contents of an aerosol can into a victim's face. The defendant's vandalism examples are therefore not fatal to the government's argument. The *quantum* of force used when committing vandalism by spray paint is identical to the amount of force used during an assault, even if the *object* of the force is different—and such force qualifies as violent under *Curtis Johnson*.

The defendant's next citation, *United States v. Simpson*, 460 F.2d 515 (9th Cir. 1972), fares no better:

> On December 24, 1970, Simpson took a container of gasoline to the offices of the Local Board of the Selective Service System in San Jose, California. He intended—despite his knowledge that such acts were illegal—to burn some of the Board's records in an effort to move the United States toward terminating the conflict in Southeast Asia.

> After surreptitiously gaining access to the Board's file room, he opened one of the file drawers, doused the contents with his gasoline, ignited a match, and set the files ablaze. When the heat from the fire became unbearable, Simpson retreated from the room. He remained in the building, however, and thus was, within moments, arrested.

18

*Id.* at 516. It seems fairly obvious that dousing another person in gasoline and setting that person on fire would involve the use of violent force.[5]

Next, the defendant cites *United States v. Carlson*, No. 2:10-cr-298 (ELJ), 2011 WL 13141452 (D. Idaho Sept. 15, 2011). There, the "[t]he indictment allege[d] the co-defendants spray painted the rock face at the Red Elk Rock Shelter located on land belonging to the United States and damaged the property in an amount exceeding $100." *Id.* at *1. But again, consistent with the First Circuit's reasoning in *Edwards*, such conduct categorically involves the use of violent force. That is doubly so here, given that the defendant caused more than $1,000 in damage.

Finally, the defendant points to *United States v. Jones*, 607 F.2d 269 (9th Cir. 1979). There, the Ninth Circuit described the offense conduct this way:

> On December 22, 1977 Forest Service officers and archaeologists allegedly observed the defendants, Kyle Jones, Thayde Jones, and Robert Gevara, digging in Indian ruins located on federal government land in the Brooklyn Basin of the Cave Creek Range District of the Tonto National Forest. The officers arrested the defendants, and a grand jury returned a two count indictment. Count I of the indictment charged that the defendants wilfully and knowingly stole Indian artifacts consisting of clay pots, bone awls, stone metates and human skeletal remains, of a value in excess of $100, in violation of 18 U.S.C. §§ 641 and 2.

> Count II charged that the defendants, by means of a pick and shovel, injured the Indian ruins located in the Brooklyn Basin of the Cave Creek Range District of the Tonto National Forest, causing damage to the property in excess of $100, in violation of 18 U.S.C. §§ 1361 and 2.

---

[5] Some courts have held that federal arson, in violation of 18 U.S.C. § 844(i), is not a crime of violence. Importantly, however, that is because one can violate § 844(i) by burning one's own property, whereas a crime of violence is an offense that involves the use of force "against the person or property of another." 18 U.S.C. § 924(c)(3)(A). *See, e.g.*, *United States v. Salas*, 889 F.3d 681, 684 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 2773 (2019). These cases therefore have nothing to do with whether the force inherent in committing arson is violent.

*Id.* at 270–71 (paragraph break added).  Once again, the correct doctrinal question is whether the conduct described above involved "force capable of causing physical pain or injury to another person" within the meaning of *Curtis Johnson*.  559 U.S. at 140.  And if an offender were to use a pick and shovel against a *person* rather than an archeological site, that would be sufficient to qualify as violent force.

Indeed, the use of a pick and shovel would be sufficient even if the conduct were something less serious than battery.  As the Supreme Court explained in *Stokeling*, conduct is violent so long as it "includes the amount of force necessary to overcome a victim's resistance," as in a common-law robbery.  139 S. Ct. at 555.  And if one were to ask, "Could an offender commit robbery by threatening someone with a pick and shovel?" the answer is clearly "yes."

To the extent it is possible to imagine more fanciful hypotheticals involving potential injury to federal property that do not involve violent force (tampering with the climate-control system at the National Archives and harming the Declaration of Independence, say), that is not a sufficient basis on which to vacate the defendant's conviction.  As the Fourth Circuit explained in *United States v. Rumley*, 952 F.3d 538 (4th Cir. 2020), "conceiving of a violation in the 'legal imagination' is not an appropriate method by which to determine the minimum conduct necessary to violate a statute."  *Id.* at 551 (quoting *Moncrieffe v. Holder*, 569 U.S. 184, 191 (2013)).  "'There must be a realistic probability, not a theoretical possibility' that the described conduct would be prosecuted under the statute."  *Id.* (quoting *United States v. Drummond*, 925 F.3d 681, 689–91 (4th Cir. 2019)).  The defendant has not made such a showing here.

Accordingly, a violation of § 1361 resulting in over $1,000 in damage qualifies as a force-clause crime.

**II.**    **Alternatively, if the Court were to grant habeas relief, it should conduct a resentencing.**

If the Court were to conclude that a violation of § 1361 is not a force-clause crime, thereby invalidating the defendant's conviction on Count 2, it should hold a resentencing rather than enter a corrected judgment.

A district court acts within its discretion in determining "the form of relief [it] awards to a successful § 2255 petitioner," including whether to hold a new sentencing hearing or to enter a corrected sentence by amending the judgment. *United States v. Hadden*, 475 F.3d 652, 667 (4th Cir. 2007) (citing *United States v. Torres-Otero*, 232 F.3d 24, 29–30 (1st Cir. 2000); *United States v. Gordon*, 156 F.3d 376, 381 (2d Cir. 1998)). The Fourth Circuit has previously stated that, typically, "the most 'appropriate' remedy" under § 2255 "is to … permit resentencing." *United States v. Hillary*, 106 F.3d 1170, 1172 (4th Cir. 1997).

Here, the defendant received a sentence on Count 3 (attempted injury to veterans' memorials, in violation of 18 U.S.C. § 1369) of just 60 months. (ECF No. 68.) That statute, however, has a maximum term of imprisonment of ten years, meaning that Court could increase the sentence on Count 3 to account for *vacatur* of Count 2.

Indeed, the default rule is that when a successful habeas petition results in *vacatur* of a § 924(c) conviction, a defendant faces the possibility of a resentencing at which a district court can reconfigure its sentencing package by imposing a higher sentence on the remaining counts. *See United States v. Bermudez*, 82 F.3d 548, 550 (2d Cir. 1996) (explaining that sentencing courts have the discretion to "increase the sentence on a specific count where the original sentence was imposed as part of a package that included a mandatory consecutive sentence which was subsequently found to be invalid"); *accord Pasquarille v. United States*, 130 F.3d 1220, 1222 (6th Cir. 1997) ("Every circuit that has considered this issue has held that the district

21

court has the authority to resentence a defendant who has secured reversal of a § 924(c) conviction under § 2255." (citing *Hillary*, 106 F.3d at 1171)).  Likewise, removing a § 924(c) conviction from the sentencing package in this case may alter the Guidelines calculations.  Although the existence of a § 924(c) conviction generally precludes the application of any firearm enhancement to specific offense conduct (*see* U.S.S.G. § 2K2.4, app. note 4), the offense conduct here would warrant application of such an enhancement if Count 2 were invalidated.  *See* U.S.S.G. § 2B1.5(b)(6) (applying a firearm enhancement to a § 1369 offense).

The case for a resentencing is especially strong where, as here, the defendant agreed as part of his plea that a total sentence of 25 years would be appropriate.  (ECF No. 19 ¶ 5.)  That is because, irrespective of the remedy selected, "the goal of § 2255 review is to place the defendant 'in exactly the *same* position he would have been' had there been no error in the first instance." *Hadden*, 475 F.3d at 665 (quoting *United States v. Silvers*, 90 F.3d 95, 99 (4th Cir. 1996)).

Accordingly, if the Court were to conclude that *Davis* has invalidated the defendant's § 924(c) conviction, it should hold a resentencing.

### Conclusion

Because the defendant's predicate offense of willfully injuring government property (and causing damage greater than $1,000), in violation of 18 U.S.C. § 1361, qualifies as a crime of violence under § 924(c)'s still-valid force clause, *Davis* has no effect on the present case.  The statute's second prong—committing a depredation against government property—also qualifies as a force-clause crime.  Because the defendant's collateral attack fails on the merits, this Court should deny the habeas petition.

22

Respectfully submitted,

G. Zachary Terwilliger
United States Attorney


By: _____/s/_____

Daniel T. Young
Assistant United States Attorney
United States Attorney's Office
2100 Jamieson Avenue
Alexandria, Virginia 22314
Office:   (703) 299-3700
Fax:      (703) 299-3980
Email:    daniel.young@usdoj.gov

23

**CERTIFICATE OF SERVICE**

I certify that on October 5, 2020, I electronically filed a copy of the foregoing with the

Clerk of the Court using the CM/ECF system, which will send a notification of such filing (NEF)

to all counsel of record.


By:       _____/s/_____
          Daniel T. Young
          Assistant United States Attorney
          United States Attorney's Office
          2100 Jamieson Avenue
          Alexandria, Virginia 22314
          Office:   (703) 299-3700
          Fax:      (703) 299-3980
          E-mail:   daniel.young@usdoj.gov

24